UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

**MICHELLE BAKER,** *et al.***,**
   Plaintiffs,

v.

**FIAT CHRYSLER
AUTOMOBILES US LLC,**
   Defendant.

Case No. 1:22-cv-980-CLM

## MEMORANDUM OPINION

Michelle Baker and Cody Berta (collectively, "Plaintiffs") owned a Fiat 500x Sports Utility Vehicle ("SUV"). One morning, the SUV caught fire in Plaintiffs' driveway. So Plaintiffs sued the SUV's manufacturer, Fiat Chrysler Automobiles US LLC ("FCA"), in state court under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD") and the Uniform Commercial Code ("UCC")[1]. FCA removed the case to this court and now seeks summary judgment on all claims. (Doc. 15). Having reviewed all submissions, the court agrees with FCA: Plaintiffs' failure to offer expert testimony that explains why their SUV caught fire dooms their case.

For the reasons stated within, the court **DENIES** FCA's Motion to Strike Plaintiffs' Exhibit A (but grants in part FCA's Objection to the Exhibit) and **DENIES AS MOOT** FCA's request to strike Plaintiffs' other exhibits. (Doc. 22). The court **GRANTS** FCA's Motion for Summary Judgment as to Plaintiffs' AEMLD claims, Count I (Defective Product Design) and Count II (Manufacturing Defect) and as to Plaintiffs' UCC claim, Count III (Breach of Warranty). (Doc. 15).

---

[1] Implied warranties are governed by Alabama's version of the Uniform Commercial Code, codified in Title 7, Ala. Code 1975.

**BACKGROUND**

These facts are undisputed or, if there is a dispute, they are stated in a light most favorable to Plaintiffs. *See White v. Mercury Marine Div. of Brunswick, Inc.,* 129 F.3d 1428, 1430 (11th Cir. 1997).

1. *The fire*: Berta bought a used 2016 Fiat 500X crossover SUV from a local Hyundai dealer in February 2018. The SUV had about 48,000 miles when Plaintiffs purchased it. (Doc. 19-13 at 10).

On July 11, 2020, the SUV caught fire in Plaintiffs' driveway around 5:50am, and the fire spread to Plaintiffs' house. (Doc. 19-13 at 2). The Oxford Fire Department came and put out the fire. (Doc. 19-13). The fire destroyed the SUV:



(Doc. 19-2). According to Plaintiffs' interrogatory responses, Berta had "only been out of the vehicle for about 15 or 20 minutes before the fire." (Doc. 19-13 at 7).

Because the parties' arguments focus on the Fire Department's incident report, the court pastes the entire narrative written by Battalion Chief Richard Macoy:

> I responded to a page out for a room and content fire with entrapment at 78 Dessie Cir. Upon my arrival on scene fire units had extinguish the fire and was waiting for my cause and determination of the fire scene before they begin salvage and overhaul procedures. My initial overview of the scene, there was a 2016 Fiat 500x that sustained heavy fire damage to the entire automobile but the front engine compartment sustained the heaviest damage from fire. The A-side of the structure closest to the D-side sustain fire heavy fire damage on the outer wall and it burn completely through the floor joist at the base of the window.
> I spoke with the neighbor( Shareen Fay Brook) she said at approximately ate 5:50 AM she heard a loud popping sound and look out her front door and noticed her neighbors car on fire and a small fire burning on the outside of the home. Miss Brook instructed her son to call 911 and report the car fire and to tell 911 the the car is catching the house on fire and that she thought someone was still in the house.
> I spoke with the home owner (Michelle Renee Baker) she stated around 2am she converse with her son (Cody Lee Berta) he said he was at a gathering and that he would be home a little later that normal so she said she went back to bed. Miss Baker was awaken by her neighbor and was told that their car and house was on fire. Miss Baker said she grab her car keys ran outside and pulled her SUV into the street. Around this time is when the first OPD unit arrives on scene an actually has video footage of the scene from this moment on.
> Shortly after OPD units arrived on scene OFD units arrived on scene and did an search of the resident and found and removed Cody Lee Berta from the living room area. Mr. Berta was was questioned by Officer Adams on scene and then treated and transported to the hospital. Both resident said that they have been having mechanical issues out of the Fiat. Miss Baker said that the car had power surges and that they had to have the battery replace on it a couple days ago.
> It is in my opinion that the car started the house fire by what cause the car to catch on fire was undetermined do to the extensive fire damage.

(Doc. 19-1 at 5). Importantly, Chief Macoy ended his narrative by stating that the cause of the car fire "was undetermined [due] to the extensive fire damage." (Doc. 19-1 at 5).

2. *The aftermath*: Plaintiffs told FCA about the fire. (Doc. 1-1 at 8). FCA provided an independent inspection of the burnt SUV, which resulted in a finding that "the information at hand would not permit us to associate the fire with a manufacturing or assembly error." (Doc. 19-3).

Also after the fire, FCA mailed Plaintiffs a "Customer Satisfaction Notice" labeled "W80." (Doc. 19-11). The W80 notice told Plaintiffs that their SUV might suffer from a "low oil condition" that if left unaddressed, could cause the SUV to stall. (Doc. 19-11). So FCA suggested Plaintiffs bring the SUV to the dealership for testing and possible repair. (Doc. 19-11).

Four months after the fire, the City of Oxford sent Plaintiffs a notice to dispose of the burnt SUV within 14 days in accordance with city code. (Doc. 19-15). So Plaintiffs disposed of the SUV. (Doc. 19 at ¶ 11).

3. *The lawsuit*: Plaintiffs sued FCA in state court, (*see* doc. 1-1), and FCA removed the case to this court, (*see* doc. 1). Plaintiffs alleged three counts: "design defect" (Count One); "manufacturing defect" (Count Two); and "breach of warranty" (Count Three). (Doc. 1-1 at ¶¶ 6-20). Plaintiffs seek damages for medical expenses, pain and suffering, mental anguish, permanent injuries, disfigurement, lost wages, and extensive property damage to Plaintiffs' house and personal vehicle—as well as punitive damages. (Doc. 1-1 at ¶¶ 12, 15, 18).

## STANDARD OF REVIEW

In reviewing a motion for summary judgment, the court views the facts and draws all reasonable inferences in the light most favorable to the non-moving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). But where the evidence is merely colorable or not significantly probative, no genuine dispute of material fact exists, and summary judgment is appropriate. *Id.* at 249-50. Further, if the non-movant responds to the motion for summary judgment with just conclusory allegations, the court must enter summary judgment for the movant. *Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir. 1989).

---

[2] Alabama's standard of review reflects the federal standard of review. In Alabama product liability cases, after the defendant makes a prima facie showing of grounds for summary judgment, the plaintiff must present substantial evidence that a reasonable jury could find in his or her favor for the case to proceed to trial. Ala. Code § 12-21-12 (2023); *see also* ALA. R. CIV. P. 56(3)(e). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." *West v. Founders Life Assur. Co. of Fla.*, 547 So. 2d 870, 872 (Ala. 1989).

**DISCUSSION**

Plaintiffs cannot prove any of their claims without proving what caused the fire. Without proof of cause, they cannot prove the fire resulted from a design defect (Count 1) or a manufacturing defect (Count 2), nor can they prove that FCA breached some part of a warranty (Count 3).

In a nutshell, FCA argues that the court should dismiss Plaintiffs' case because Plaintiffs offer no expert opinion about what caused the fire. (*See* Doc. 17 at 4). Plaintiffs respond that Chief Macoy's narrative in the Fire Department incident report provides an expert opinion that the fire "began in the engine of Defendants' Fiat 500X," specifically "the engine compartment." (Doc. 21 at 3). FCA complains that Plaintiffs never disclosed Chief Macoy as an expert, and even if they had, Chief Macoy said that he could not determine what caused the fire because the car was burned. (Doc. 22 at 9-11).

Because the parties' merits arguments focus on Chief Macoy's statement, the court starts by deciding whether to strike the incident report or Plaintiffs' disclosure of Chief Macoy as an expert.

**I. FCA's Objection and Motion to Strike Plaintiffs' Exhibit A**

For starters, the court will not strike Plaintiffs' Exhibit A, the Fire Department's incident report, because it was mentioned during discovery. (Doc. 19-1). So the court has considered it when deciding the merits.

The court instead limits the question to whether Plaintiffs can rely on Chief Macoy's narrative within the report as an expert opinion on what caused the fire. As explained below, Plaintiffs cannot for two reasons: (1) Plaintiffs' late notice violates Rule 26 and this court's scheduling order and (2) Chief Macoy said that he could not determine the fire's cause.

### A. Untimely notice

Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705. FED. R. CIV. P.

26(a)(2)(A). For experts not specially retained by a party, Rule 26(a)(2)(C)(i)-(ii) requires the disclosure to state the subject matter on which the witness is expected to present evidence and a summary of the facts and opinions to which the witness is expected to testify. *See* FED. R. CIV. P. 26(a)(2)(C).

Consistent with the rules, the court ordered Plaintiffs to produce their expert report(s) by February 1, 2023 so that FCA could depose the expert(s) by February 24, 2023. (Doc. 7). Plaintiffs disclosed no experts by the deadline and thus no expert depositions were taken. Nor did Plaintiffs ask this Court to extend the deadlines so they could disclose an expert, despite the court allowing such requests for good cause. (*See* Doc. 7).

Further, in its first set of interrogatories, FCA asked Plaintiffs to disclose the identity of any experts and a summary of that experts' opinion. (Doc. 16-4 at 3). Plaintiffs responded that they "have not retained any expert." (Doc. 16-5 at 8). Plaintiffs never updated their response to name Chief Macoy and summarize his proposed testimony.

As a result, discovery disclosed without any expert reports or depositions. Plaintiffs first named Chief Macoy as their causation expert in their response to FCA's motion for summary judgment—more than four months after the expert disclosure deadline and more than a month after discovery closed. (Doc. 21 at 18). Plaintiffs chalked up the late disclosure to "clerical error, oversight and/or excusable neglect." (Doc. 21 at 18).

The court finds that Plaintiffs' late disclosure was not excusable and warrants exclusion of expert testimony. Rule 37(c)(1) states that when "a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37. Rule 37 allows the court to exclude a witness as a sanction for a Rule 26 violation. *See id*.

"The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party."

6

*Leathers v. Pfizer, Inc.*, 233 F.R.D. 687, 697 (N.D. Ga. 2006). Plaintiffs' statement that their failure to name Chief Macoy as an expert—thus preventing FCA from deposing him as a potential expert—was due to clerical error, oversight and/or excusable neglect does not provide substantial justification. S*ee Mitchell v. Ford Motor Co.*, 318 Fed. Appx. 821 (11th Cir. 2009) (affirming "letting in new information [not discussed under Rule 26(a) or Rule 26(e)] so late in the proceedings would be unfair and prejudicial to its case"). Rules 26(a) and 26(e), and this court's scheduling order, (doc. 7), required Plaintiffs to disclose all bases of their experts' opinions and to supplement timely their expert disclosures upon discovery of an omission or as required by court order. Plaintiffs' failure to do so cannot be excused—meaning that Chief Macoy cannot be offered as an expert on Plaintiffs' behalf.

### B. Insufficient Facts or Data

Even if the court excused Plaintiffs' delay, Chief Macoy could not offer an expert opinion under Rule 702. Rule 702(b) requires that expert testimony be "based on sufficient facts or data." But Chief Macoy says in the incident report that "what cause[d] the car to catch on fire was undetermined [due] to the extensive fire damage." (Doc. 19-1 at 5). In other words, Plaintiffs' proposed expert admits that he lacks "sufficient facts or data," FED. R. EVID. 702(b), to opine on the cause of the fire. So Plaintiffs cannot offer Chief Macoy's narrative as an expert opinion on causation.

—

For both these reasons, the court **denies** FCA's motion to strike the incident report but **grants** FCA's objection to Plaintiffs' reliance on the report to provide expert testimony on causation.

The court must also note that, even if it weren't precluding Chief Macoy as an expert, Chief Macoy said that he didn't know what caused the car fire. So Plaintiffs' attempt to qualify the Chief as an expert is pointless—at least for rebutting FCA's argument that no expert has opined on causation.

7

## II. FCA's Motion to Strike Plaintiffs' Exhibits D, K, M, N, O, P, Q, R, and S

FCA asks the court to strike six more of Plaintiffs' exhibits. The court **denies** this request **as moot** because the court's ruling on the merits does not hinge on any of these six exhibits. So the court has considered each exhibit for reviewing FCA's summary judgment motion, and FCA's evidentiary objections to these exhibits are preserved (should preservation become necessary).

## III. FCA's Motion for Summary Judgment

The court now moves to the merits of Plaintiffs' claims. Because Plaintiffs pleaded all of their claims under Alabama law, and the court is sitting in diversity, the court will apply Alabama law. *See Palmer & Cay, Inc. v. Marsh & McLennan Companies, Inc.*, 404 F.3d 1297, 1310 (11th Cir. 2005); *see also Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

Plaintiffs premise all of their claims on the allegation that some engine defect caused the SUV's engine to catch fire. As discussed below, Alabama law requires expert testimony to prove such a defect—and as discussed in Section I *supra*, Plaintiffs offer no such expert testimony.

### A. Counts I, II: AEMLD (Design and Manufacturing Defect)

1. *The expert requirement:* To establish liability under the AEMLD, a plaintiff must prove:

> He suffered injury or damages to himself or his property by one who sells a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it was sold.

*Casrell v. Altec Indus., Inc.*, 335 So. 2d 128, 132 (Ala. 1976). When the product is "complex and technical," Alabama law ordinarily requires plaintiffs to prove the alleged defect with expert testimony, *see Brooks v. Colonial Chevrolet-Buick*, 579 So. 2d 1328, 1333 (Ala. 1991); *Verchot v. Gen. Motors Corp.*, 812 So. 2d 296, 301 (Ala. 2001), because lay juries lack the knowledge, training, and experience necessary to determine the existence of a defect in a technical product. *Townsend v. Gen. Motors Corp.*, 642 So. 2d 411, 415 (Ala. 1994).

Plaintiffs say that some defect in the SUV's engine caused the fire, but courts have found that a specific part of a car is the type of "complex and technical" product that requires expert testimony to establish the existence of a defect. *See Gardner v. Ford Motor Co.*, 166 F. Supp. 3d 1261, 1273 (M.D. Fla. 2015) ("Just as proving that a fire started in the Vehicle's engine compartment does not prove that the fire was caused by a defect in the ABS module connector or that such an unestablished defect caused the fire, demonstrating that a fire started in the location of the ABS module connector does not prove that it was defective or that the alleged defect caused the fire."); *Turner v. DaimlerChrysler Corp.*, No. CIV.A.99-0696-RV-L, 2000 WL 1843601, at *2 (S.D. Ala. Oct. 31, 2000) (granting summary judgment because the plaintiff did not offer expert testimony to prove an alleged defect in her vehicle's airbag system); *Verchot v. Gen. Motors Corp.*, 821 So. 2d 296, 303 (Ala. 2001) (quoting *Brooks v. Colonial Chevrolet–Buick, Inc.*, 579 So. 2d 1328, 1333 (Ala. 1991)) ("[A]n automobile brake system[—]composed of, among other parts, [calipers,] rotors, disks, rear wheel cylinders, brake shoes, and master cylinders[—]appears to be precisely the type of complex and technical commodity that would require expert testimony to prove an alleged defect."); *O'Bryan v. Ford Motor Co.*, 18 F. Supp. 3d 1361, 1366 (S.D. Fla. 2014) (affirming summary judgment because of a lack of expert testimony about an allegedly defective speed control deactivation switch); *McLaughlin v. Monaco, RV LLC*, No. 8:14–cv–703–T–36TGW, 2015 WL 5355465, at *4 (M.D. Fla. September 14, 2015) (finding that plaintiffs could not establish a defect without testimony of an "expert witness regarding what

constitutes a covered defect in the [slide], RV industry standards and the mechanics associated with an RV"). An automobile's engine consists of, among other parts, cylinder heads, camshaft(s), timing belt(s), and exhaust manifold(s); "it is a system composed of parts that would not be familiar to the lay juror, and the lay juror could not reasonably be expected to understand that system and determine if it was defective, without the assistance of expert testimony." *See Brooks*, 579 So. 2d at 1333. So Plaintiffs must offer expert testimony that links a defect in the engine to the fire. Because they have not, they cannot prove their AEMLD claim.

2. *Plaintiffs' evidence:* Plaintiffs argue that (1) the Fire Report and (2) the photographs taken of the burnt SUV provide enough evidence to defeat FCA's Motion for Summary Judgment. (*See* Doc. 21 at 23-24). As for the Fire Report, Plaintiffs maintain that "Oxford Fire Department Battalion Chief Macoy's Incident Report, and the factors employed in reasonably concluding the same meet the necessary standard of proof for Plaintiffs to survive Defendant's Motion for Final Summary Judgment, because of 'the non-"rocket science" nature of [Battalion Chief Macoy's] investigations and conclusions.'" (Doc. 21 at 23 (citing *Bagley v. Mazda Motor Corp.*, 864 So. 2d 301, 310 (Ala. 2003)). But the court held in *supra* Section I, Chief Macoy is not an expert and said that he could not determine the fire's cause.

As for the pictures, Plaintiffs add:

[t]he photographs taken of the automobile at issue in this action clearly display for any lay witness and/or jury to reasonably conclude that the engine of the automobile at issue in this action was the source of the fire at issue, because the engine wholly and completely burned to nothing but ashes, while the remainder of the automobile at issue in this action remained intact, albeit unmistakably and significantly fire damaged.

(Doc. 21 at 30 (citing Doc. 19-2 at 1-10)). But lay pictures are not expert testimony, which is required given the nature of the alleged defect in a technical product. *See Brooks*, 579 So. 2d at 1333.

In short, the Fire Report and the vehicle photographs—unsupported by any other evidence—are not enough to create a jury question over the existence of a defect and insufficient to overcome summary judgment. *See Anderson*, 477 U.S. at 249-50.

### B. Count III: Breach of Warranty

The AEMLD subsumes state-law breach of warranty claims, so Plaintiffs' breach-of-warranty claims fail for the reasons outlined *supra* Section III(A) of this opinion. *See Yarbrough v. Sears, Roebuck & Co.*, 628 So. 2d 478, 483 (Ala. 1993) (citing *Shell v. Union Oil Co.*, 489 So. 2d 569, 571 (Ala. 1986)) (affirming summary judgment on a warranty claim and holding that whether a product is unreasonably dangerous is not a question properly addressed in a claim alleging breach of warranty, but instead should be raised in a claim under the AEMLD). And even if Plaintiffs' warranty claim were not subsumed by the AEMLD, it would nevertheless fail because Plaintiffs have not provided sufficient evidence to establish the alleged defect. *See Pearl v. Mad Engine, Inc.*, No. 7:12-CV-2850-TMP, 2015 WL 5179517, at *7 (N.D. Ala. Sept. 4, 2015) (holding the plaintiffs' warranty claim failed for the same reason as their AEMLD claim—failure to demonstrate that the product was defective).

## CONCLUSION

For these reasons, the court **DENIES** FCA's Motion to Strike Plaintiffs' Exhibit A submitted in response to the Motion for Summary Judgment and **DENIES as MOOT** FCA's Motion to Strike Plaintiffs' Exhibits D, K, M, N, O, P, Q, R, and S submitted in response to the Motion for Summary Judgment. (Doc. 22). The court **GRANTS** FCA's Motion for Summary Judgment as to Plaintiffs' AEMLD claims, Count I (Defective Product Design) and Count II (Manufacturing Defect) and as to Plaintiffs' UCC claim, Count III (Breach of Warranty). (Doc. 15).

The court will enter a separate order consistent with this Memorandum Opinion that dismisses Plaintiffs' complaint with prejudice and closes this case.

**DONE** and **ORDERED** on January 8, 2024.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE